Keith B. REDD, d/b/a Abajo Petroleum, Plaintiff-Appellee,

v.

SHELL OIL COMPANY, Defendant.

In the Matter of Michael W. GRANEY, Attorney for Shell Oil Company, Appellant.

No. 74–1801.

United States Court of Appeals, Tenth Circuit.

Submitted May 23, 1975.

Decided June 18, 1975.

Daniel L. Berman of Berman & Giauque, Salt Lake City, Utah, for plaintiff-appellee.

Robert H. Harry of Davis, Graham & Stubbs, Denver, Colo. (David M. Ebel, Donald E. Phillipson and Thomas A. Smart, Davis, Graham & Stubbs, Denver, Colo., on the brief), for appellant.

Before MURRAH, BARRETT and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

This appeal is concerned with an attorney disciplinary proceeding which was ancillary or supplemental to an antitrust case in the United States District Court for the District of Utah, Keith B. Redd, d/b/a Abajo Petroleum v. Shell Oil Company. The lawyer who was subjected to the disciplinary sanction was Michael W. Graney of the District of Columbia, attorney for Shell Oil Company in the antitrust case. The trial court determined that Graney had sponsored what the court found and determined to be a meritless and untimely motion for disqualification of all of adversary's counsel, which motion had been made without adequate investigation. The court proceeded to apply the principle that the filing of a motion for disqualification drawing into question the ethical propriety of an adversary's conduct, and without adequate foundation, constitutes a violation of ethical standards. The reasoning was that the sponsorship of such a motion on the eve of trial based on circumstances which had been present long prior thereto constituted a sham and justified the imposition of sanctions. Thereupon, the court determined that Mr. Graney should be fined in the amount of $5,000.

The factual background which gave rise to this incident arose in connection with the antitrust case in which Redd, a dealer of petroleum products, sought to recover for violations of § 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, conspiracy in restraint of trade. This cause was filed May 18, 1971. There followed considerable pretrial discovery and other pretrial activity. Finally, the cause was set for trial on July 15, 1974. However, on July 12, 1974, plaintiff Redd, through his attorney, filed a final pretrial order. Thereupon, allegedly because of the content of this pretrial order, Shell filed and served a motion to disqualify plaintiff's attorneys. The motion asserted that plaintiff's lawyers, all of them, were subject to disqualification under Canons 4 and 9 of the Code of Professional Responsibility. This motion was supported by affidavits and depositions of members of a law firm in Los Angeles, California, counsel for Shell Oil Company. The underlying factor in the filing of this dis-

qualification motion was the employment by Mr. Daniel Berman, attorney for Redd, of one Richard D. Burbidge, a young lawyer who had previously worked for the law firm of McCutchen, Black, Verleger & Shea of Los Angeles, California, attorneys for Shell. The allegation was that Burbidge's employment in the McCutchen firm for 18 months after graduation disqualified him from participating on the side of Redd and becoming associated with Mr. Berman in Utah in the case (Burbidge was shown to have been a graduate of the University of Utah College of Law).

One of the bases for the action of the court in ruling that this motion to disqualify was a sham was its finding that the cases on which Burbidge worked were not related to the case of Redd v. Shell Oil Company. This appeal pertains only to the counter proceedings against attorney Graney. To determine whether the disqualification motion was filed in good faith, it is nevertheless necessary to consider, to some degree at least, what occurred in the pretrial preparations. These are somewhat complicated.

First, the court granted a partial summary judgment, finding that Shell had imposed unlawful territorial restrictions on the plaintiff. Notices were sent out by the clerk in May that the cause was to go to trial on July 15, 1974. The next step was on July 2, 1974, when counsel for the plaintiff submitted a proposed pretrial order to the trial court. This was largely a definition of issues since there had not been a pretrial conference. Defendant Shell opposed the entry of the pretrial order on the ground that it expanded the issues as well as the scope of the alleged conspiracy.

The original complaint had charged the defendant with conspiring to restrict the territory and the customers to whom the plaintiff could resell gasoline, diesel fuel and other petroleum products purchased from Shell and doing so with specific intent to suppress and eliminate competition and purchasers of the products. The provision of the pretrial order

which sets forth the mentioned allegations reads as follows:

(1) The defendant Shell Oil Company has contracted, combined, and conspired with Shell jobbers including the plaintiff in violation of § 1 of the Sherman Act to restrict the territorial area in which such jobbers and the plaintiff may resell petroleum products including gasoline purchased from the defendant Shell and pursuant to such unlawful contract, combination, and conspiracy and as part thereof the defendant Shell has sold gasoline and diesel fuel to the plaintiff only at a price f. o. b. the plaintiff's bulk plants in Blanding, Utah, and Kayenta, Arizona, and required the delivery of such products to such bulk plants and terminated the plaintiff as a Shell jobber.

As we view it, the only addition to the original allegations is the last part which states that Shell had sold gasoline and diesel fuel to the plaintiff only at a price f. o. b. the plaintiff's bulk plants in Blanding, Utah and Kayenta, Arizona and required the delivery of such products to such bulk plants and terminated plaintiff as a Shell jobber. Paragraph (2) specifically refers to the tying and licensing of Shell's trademarks, brand names, and color schemes to the sale and distribution of gasoline to plaintiff. It is said that the pretrial order spelled out Shell's distribution system and showed conspiracies with its jobbers to prevent them from competing with each other and Shell by restricting territory in which they could resell. It is true that this paragraph is much more specific than the general paragraphs, 7(e) and (f) of the complaint. It is not so clear that it changes the basic theory of plaintiff's claims.

The trial court allowed the pretrial order to be filed on July 12, 1974, over the objection of the appellant Graney that it fundamentally changed the case because, so it was argued, the pretrial order modified the focus of the case from claiming horizontal conspiracy to a cause which

attacked Shell's vertical marketing procedures. It was then that Graney proceeded to seek disqualification of the lawyers representing plaintiff Redd on the ground that Burbidge had become associated with the Berman law firm, which was the representative of the plaintiff, and had done so immediately after leaving the McCutchen firm in Los Angeles. The court deferred hearing the motion until the opening of the trial on the 15th of July.

The Graney motion recommended the disqualification of plaintiff's lawyers on the ground that Burbidge had spent 132 hours while he worked for the McCutchen firm on work of Shell Oil Company. By reason of this and the fact that he had been hired by the Berman firm soon after leaving McCutchen, it was contended that there had been a violation of Canons 4 and 9 of the Code of Professional Responsibility. This motion also brought out that a similar attack had been made in Arizona where two district judges had ruled that the Berman firm lawyers were disqualified. It was not contended that Burbidge had worked on the case of Redd v. Shell Oil Company. Rather, stress was placed on the fact that Burbidge had spent 132 hours working on other and different cases in which Shell was a party and allegedly had access to information affecting the main case. The matters in which Burbidge was engaged "included disputes of Shell Oil Company dealers and contractual responsibilities of Shell and its dealers as to each other." In addition, the motion said that Burbidge had frequent contacts with other members and associates of the firm who were engaged in representing Shell and its subsidiaries.

The day following the filing by Graney of the motion to disqualify the Berman firm, the latter filed a motion to strike the Graney disqualification motion. On the first day of trial after a discussion by counsel with the court, the judge postponed hearing the motions and issued an order to show cause directed to Graney why disciplinary sanction should not be imposed. This was based on Berman's motion to strike and his contention that the disqualification motion was unsupported in both law and fact and was interposed for the purpose of delay.

Graney seeks reversal of the adjudication and the imposition of sanction. He contends:

1. That it was error for the court to adjudge him guilty of a violation of professional ethics—that this was ill founded and erroneous.

2. That it was error for the court to rule that there was a willful filing of a sham and false motion contrary to Rule 11 of the Rules of Civil Procedure.

3. That it was error for the court to rule that Graney had interposed the motion for purposes of delay.

4. That the court exceeded its authority in imposing the $5,000 fine.

The question whether the court erred in denying the motion to disqualify the Berman firm is not directly raised. We are presented with it indirectly. The question of the adequacy of the evidence to justify the filing of the disqualification motion by Graney is before us in connection with the validity of the sanction. Was Graney's motion plainly insufficient so as to render him guilty of violation of ethics which justified the imposition of the considerable sanction which was adjudged?

Another complicating factor is that Graney had filed a separate appeal of an adverse judgment in the antitrust case, Redd v. Shell Oil Company. This poses a threat of overlapping issues. We have concluded, however, that the decision which we make in the case at bar does not encroach on the antitrust case and the latter does not prevent our disposing of the instant case now.

I.

■ Ordinarily the control of attorneys' conduct in trial litigation is within the supervisory powers of the trial judge, and his performance in this area is a matter of judicial discretion. *See* Waters v. Western Company of North America, 436 F.2d 1072 (10th Cir. 1971).

Our court in the *Waters* case, in an opinion by Chief Judge Lewis, noted that appearances of conflict are not controlling and also that the factor of prior representation is not conclusive. There an attorney for third party defendant filed a counterclaim against the plaintiff whom he had previously represented. The trial court allowed the pleading to be filed.[1]

The general test is whether a substantial relationship exists between the pending suit and the matters in which the attorney is charged to have previously represented the client. Uniweld Products, Inc. v. Union Carbide Corp., 385 F.2d 992 (5th Cir. 1967), *cert. denied,* 390 U.S. 921, 88 S.Ct. 853, 19 L.Ed.2d 980 (1968); Pioche Mines Consol., Inc. v. Dolman, 333 F.2d 257 (9th Cir. 1964), *cert. denied,* 380 U.S. 956, 85 S.Ct. 1081, 13 L.Ed.2d 972 (1965); T. C. & Theatre Corp. v. Warner Bros., 113 F.Supp. 265 (S.D.N.Y.1953) (Judge Weinfeld).

The trial court ruled that the connection required by the cases between the issues in the pending suit and the matters in which Burbidge had worked while with the McCutchen firm was not established. We do not consider it necessary to finally determine this question beyond observing that there were indications at least of the existence of a conflict. Thus, the employment of Burbidge by the Berman firm and his assignment to this particular case served to invite the attack which was made. Indeed, the same kind of effort had occurred in other cases. *See* Petrol Stops Northwest v. Continental Oil Co., Civil Action No. 73–212 (U.S.D.C., D.Arizona); Gas-A-Tron of Arizona v. Union Oil Co., Civil Action No. 73–191 (U.S.D.C., D.Arizona); and Bonus Oil Co. v. American Petrofina Company, Civil Action No. 73–L–165 (U.S.D.C., D.Arizona). So, if Graney had filed the motion some months prior to the date of trial it would have merited serious attention and consideration.

Why he postponed the filing until the Friday before the Monday on which the trial was to commence is inadequately explained. He maintains that it was because the proposed pretrial order signaled the use of information which Burbidge must have obtained from the McCutchen firm. We can only say that this assertion is farfetched. It seems more likely that the motion was held in reserve until the most expedient time came along to file it. From the date that Burbidge commenced work with the Berman law firm in early February 1974,[2] the fact of his employment was known and the motion could have been filed at that time. It would have been more logical to have filed it during the pretrial stage so as to avoid the very kind of disorder which resulted.

## II.

We consider it unnecessary, as we have previously indicated, to review the trial court's findings as to the inadequacy of Graney's basis for attempting to disqualify the Berman firm. The late filing fully justified the summary rejection of the motion.

As to the filing by the Berman firm alleging unethical conduct and seeking sanctions against Graney, this was in a sense retaliatory, but that does not justify it, for it was as collateral and immaterial to the main issues as the Graney motion seeking to disqualify Berman. Both lacked justification, particularly at that late date.

As to the imposition of the $5,000 sanction, this too was wholly unjustified. Rejection or denial of the motion to disqualify would have constituted an ample response. The amount of the fine bespeaks the trial court's view that the dereliction was of very great magnitude. We must disagree with this assessment. This fine was not a correct measure of the action. As we have mentioned, it would have been amply suffi-

---

1. The appeal which was interlocutory was dismissed as having been improvidently granted.

2. This was immediately after leaving the McCutchen firm.

cient to strike the motion to disqualify and to have reprimanded counsel for having filed it at the eleventh hour. Similarly, the motion of the Berman firm seeking adjudication that the Canons had been violated was equally collateral and that also should have been rejected.

 Finally, we are not to be understood as condoning any conduct which appears in this record. The narrow matter presented to us is the validity of the adjudication against Graney. Our decision is that it was grossly excessive and unjustified. At the same time we reiterate that lawyer conflict of interest problems ought to be brought up long before the date of trial in an atmosphere which does not cast a shadow over the trial itself.[3]

The judgment is reversed and the cause is remanded with instructions to vacate the adjudication and sanction imposed against appellant Graney.

---

**3.** In a recent decision of this court, Fullmer, et al. v. Harper, et al., No. 75–1162, filed May 5, 1975, the procedure applicable to this kind of matter is carefully set forth. We said:

In our view the verified motion to disqualify raises ethical questions that are conceivably of a serious nature. In such circumstances a written response should be required. The trial court should then hold a full evidentiary hearing on the issues posed by the motion to disqualify and the response thereto, which hearing should include the taking of testimony. A motion of this type should not be resolved on the basis of mere colloquy between court and counsel. At the conclusion of such hearing the trial court should then make specific findings and conclusions, to the end that this court will then have a record before it which will permit a meaningful review, should review be sought.