**F I L E D**
United States Court of Appeals
Tenth Circuit

OCT 25 2000

**PATRICK FISHER**
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

H. MICHAEL WEEKS,

     Plaintiff-Appellant,

v.

INDEPENDENT SCHOOL DISTRICT
NO. I-89, of Oklahoma County,
Oklahoma, Board of Education,

     Defendant-Appellee,
_____
MARILYN D. BARRINGER;
RICHARD B. WILKINSON,

     Attorneys-Appellants.

Nos. 98-6293, 98-6382, 99-6239

---

**Appeal from the United States District Court
for the Western District of Oklahoma
(D.C. No. CIV-96-1692-C)**

---

Michael C. Salem, Norman, Oklahoma (Marilyn D. Barringer and Richard B.
Wilkinson, Oklahoma City, Oklahoma, with him on the briefs), for Appellants.

Laura L. Holmes and Timothy M. Melton of The Center for Education Law, Inc.,
Oklahoma City, Oklahoma, for Defendant-Appellee.

---

Before **EBEL,** Circuit Judge, **McWILLIAMS,** Senior Circuit Judge, and
**BRISCOE**, Circuit Judge.

---

**EBEL**, Circuit Judge.

This case involves three companioned appeals by attorney Marilyn D. Barringer ("Barringer").[1] Barringer served as original counsel for H. Michael Weeks ("Weeks") in an action brought against Independent School District No. 89 ("School District"). Prior to trial, the district court entered an order disqualifying Barringer from further participation in the litigation because of improper ex parte communications. Weeks, with new counsel, subsequently prevailed on some of his claims. After the judgment, the district court granted a motion by the School District to reduce Weeks' award of costs to exclude costs for depositions connected with Barringer's ethical violations. The district court then awarded attorney fees to Weeks, but for an amount less than he had originally requested. Barringer appeals the disqualification ruling, the reduction in costs, and the amount of attorney fees the court awarded Weeks. We affirm the disqualification ruling, and we hold that Barringer lacks standing to appeal the reduction in costs and the amount of attorney fees.

---

[1] Attorney Richard B. Wilkinson ("Wilkinson") failed to sign the notices of appeal for these appeals, and thus is not a proper appellant before this court. See 10th Cir. R. 3.1; Fed. R. App. Pro. 3(c)(2). After oral argument, Barringer and Wilkinson filed a motion to supplement the record, part of which asked that the court add a pleading to the entries of appearances to include an entry for Wilkinson. That part of their motion was denied as untimely because the proposed pleading was not filed in the district court until January 31, 2000 and was not part of the timely notice of appeal. See Order of March 2, 2000.

# I. BACKGROUND

## A. Disqualification

Barringer represented Weeks, a former bus driver of the Oklahoma City Public Schools, in his claims against the School District under § 1983, the Americans with Disabilities Act ("ADA"), Title VII, and the Fair Labor Standards Act ("FLSA"). During pretrial discovery, a dispute arose between the parties over the availability and relevance of certain information requested by Weeks relating to his FLSA claims for failure to pay him proper overtime compensation. The existence and relevance of the information was raised during Barringer's deposition of Marilyn Midgett ("Midgett"), an operations supervisor for the School District. On behalf of Weeks, Barringer subsequently filed a motion to compel discovery of certain documents, including documents referred to during Midgett's deposition. The district court denied the motion because the document request included information relating to a time period outside the relevant two-year period of limitations, and concerned information relating to employees other than the plaintiff. Barringer filed a motion to reconsider, and attached an affidavit from Midgett.

Through discussions during a settlement conference and through the affidavit of Midgett that was attached to the motion to reconsider the motion to compel discovery, the School District learned that Barringer had engaged in ex

parte communications with Midgett. The School District also had information indicating that Barringer had engaged in similar communications with Michael Hix ("Hix"), Weeks' immediate supervisor, regarding matters relevant to Weeks' case. The School District had further learned that Barringer had begun to represent Midgett and was considering representing Hix. The School District thus filed a motion for a protective order to prohibit Weeks and Barringer from conducting ex parte communications with any of its present or former supervisory personnel, and a motion to exclude evidence obtained through any ex parte communications that may have already occurred. The School District argued that Barringer's conduct violated Rule 4.2 of the Oklahoma Rules of Professional Conduct,[2] which, in the case of an organization, prohibits communications with persons who have managerial responsibility for the organization that is the opposing party, with persons whose act or omission in connection with the matter can be imputed to the organization for purposes of liability, and with persons whose statement may constitute an admission on the part of the organization. The School District claimed that both Midgett and Hix were employees with whom communications were prohibited under Rule 4.2. Although Hix no longer worked for the School District when the motion for a protective order was filed, he had

_____

[2] Pursuant to local rule, the federal district court used the Oklahoma Rules of Professional Conduct to assess Barringer's conduct. See W.D. Okla. LCvR 83.6(b).

- 4 -

been employed with the School District at the time of the alleged ex parte communications.[3] The School District asked that the court prohibit Barringer from contacting any of its present or former supervisory personnel, specifically Midgett and Hix, exclude any evidence obtained from Midgett and Hix, and strike Midgett and Hix as witnesses.

In response to the School District's motion, Barringer did not dispute that she engaged in ex parte communications with Midgett and Hix after they were identified as witnesses by the School District; rather, she contended that because both Midgett and Hix were "low-level supervisory employees" with no authority to make management decisions that bind the School District, ex parte communications with them were not prohibited under Rule 4.2. To support the assertion that Midgett and Hix lacked sufficient authority to speak on behalf of the School District, Barringer cited state statutes defining school "administrators" and describing the management structure for local school districts. Barringer also cited policy justifications as to why such communications should be allowed in this instance.

---

[3] The alleged ex parte communications between Barringer and Hix were revealed at Hix's deposition on August 20 and 21, 1997, when Hix was still employed with the School District. During the deposition, counsel for the School District asked Hix if he had ever met with Barringer concerning Weeks' lawsuit. Barringer objected to the question and informed Hix that he had the right to assert the attorney/client privilege.

The district court found a violation of Rule 4.2 and sua sponte disqualified Barringer from further participation in the case as counsel for Weeks and prohibited her from engaging in ex parte communications with Midgett and Hix. The court also prohibited Weeks from using any evidence obtained through ex parte communications with Hix and Midgett at trial, permitting only their deposition testimony to be introduced. The court recited the Oklahoma Supreme Court's interpretation of Rule 4.2 as applying "only to those employees who have the legal authority to bind a corporation in a legal evidentiary sense, i.e., those employees who have 'speaking authority' for the corporation." The court was not persuaded by Barringer's citation of the state statutes on school administrators, and found that "[f]rom the materials provided to the Court, it clearly appears that plaintiff intends to use Midgett and Hix as individuals with 'speaking authority' for the defendant." Stating that "it is the attorney Marilyn Barringer and not the plaintiff [Weeks] who should bear the impact of Barringer's conduct," the court found disqualification of Barringer the proper remedy for the violation.

In a brief conference at the bench immediately after the court issued its disqualification order, attorney Wilkinson admitted that he also had consulted with both Midgett and Hix, and, pursuant to the court's order, should also be prohibited from further representation of Weeks. The court then directed that the previous order disqualifying Barringer be extended to include Wilkinson. The

case was then stricken from the November 1997 docket and reset for a future trial docket.

On November 20, 1997, Barringer and Wilkinson filed a motion to reconsider the disqualification order and request for alternative relief. In their brief, they again raised the issue of the status of Hix and Midgett as employees with "speaking authority" to bind the School District. Barringer and Wilkinson claimed that because Midgett and Hix were not listed on an organizational chart, were included in the support personnel "bargaining unit," as defined by Okla. Stat. tit. 70, § 509.2(A)(3), and were not included as "supervisory" employees in the Support Personnel Report submitted by the School District to the Oklahoma State Department of Education, they could not be considered "supervisors" under any standard. They supported their argument by drawing an analogy to the Labor Management Relations Act (LMRA), which defines "employee" to exclude supervisors, see 29 U.S.C. § 152(3), and, according to them, defines "supervisor" in a way that does not include the duties and responsibilities of either Midgett or Hix, see 29 U.S.C. § 152(11).

In the event that the court denied their motion to reconsider, Barringer and Wilkinson asked that the court certify to the Oklahoma Supreme Court the question of whether uncertified support personnel included within a collective bargaining agreement negotiated for a support employee bargaining unit are part

of the "control group" contemplated by Rule 4.2. Alternately, they asked that the court permit an interlocutory appeal to the Tenth Circuit. The district court denied the motion to reconsider and request for alternate relief, stating that although disqualification is an extreme sanction, it was appropriate under these facts.

Prior to denying Barringer and Wilkinson's motion to reconsider, the district court granted the School District's motion for summary judgment as to Weeks' Title VII claim, and granted in part and denied in part its motion for partial summary judgment on the issue of FLSA overtime pay. After the disqualification of Barringer and Wilkinson, Weeks obtained new counsel and, after the presentation of Weeks' case in chief, the trial court granted the School District's motion for judgment as a matter of law with respect to Weeks' ADA claim. The jury returned a judgment in favor of Weeks on his due process and FLSA claims, and he was awarded damages in the amount of $20,000 for his due process claim and $1,800 for his FLSA claim. Weeks did not appeal any of these rulings.

B. Costs

On June 23, 1998, Weeks filed his bill of costs with supporting brief and his motion for attorney fees with supporting brief. The School District filed

- 8 -

objections to the bill of costs and motion for attorney fees, contending in part that it should not have to pay for the depositions of Midgett and Hix because of Weeks' counsels' bad faith in connection with those depositions. The clerk taxed costs against the School District in the amount of $3,480.05, which included the cost of the depositions of Hix ($868.00) and Midgett ($612.75). The School District filed a motion and brief asking the district court to review the costs taxed by the court clerk against the School District, and to reduce the costs taxed by $1,480.00, the total of the amounts claimed for the depositions of Midgett and Hix. This motion was served on Barringer and Wilkinson. Neither Barringer and Wilkinson, nor Weeks, through his present counsel, responded to the School District's motion.

The district court granted the School District's motion, agreeing with the School District that because of Barringer's conduct regarding Midgett and Hix, the interests of justice would be served by denying a recovery of costs for their depositions. The court also noted the lack of a response to the School District's motion. The award of costs was reduced accordingly.

C. Attorney Fees

With regard to attorney fees, the district court found that Weeks was the prevailing party in the litigation; however, the court did not allow recovery for time spent on the unsuccessful claims. The court also found that Weeks' request

for attorney fees exceeded a reasonable number of hours and represented an excessive hourly rate. The court stated that it would not award a rate in excess of $150.00 per hour and referred the matter to a magistrate judge to follow that guideline. The court also prohibited recovery for any of Barringer's or Wilkinson's time dedicated to the issue of attorney conflict at any time after the date of the order of disqualification.

After receiving a proposed final billing statement from Weeks' original counsel (Barringer and Wilkinson), the magistrate judge filed a recommendation reducing the fee request from $54,823.50 to $42,746.70. Barringer and Wilkinson appealed the magistrate's recommendation. They contended the trial court should have considered the market evidence as to a reasonable hourly rate, and they objected to the denial of additional fees and the twenty percent reduction in fees based on the limited success of the litigation. The district court affirmed, but directed the parties to confer regarding some additional expenses, and report to the court. Barringer and Wilkinson filed a pleading requesting $1,933.77 in unreimbursed expenses.[4] The court denied any additional costs because Barringer

---

[4]This amount was calculated by reducing the amount of expenses Barringer and Wilkinson had billed ($4,670.02) by amounts reimbursed by Weeks ($1,255.50) and amounts disallowed for Hix and Midgett's depositions ($868.00 and $612.75, respectively).

and Wilkinson did not show that the costs were reasonable or provide sufficient itemization.

Barringer now appeals (1) the district court's November 10, 1997 disqualification order and its February 10, 1998 order denying the motion to reconsider the disqualification[5]; (2) the district court's September 2, 1998 order granting the School District's motion to review taxation of costs, which denied Weeks the costs for the depositions of Midgett and Hix; and (3) the district court's April 15, 1999 order awarding attorney fees in an amount less than Barringer believes should have been awarded.

## II. DISCUSSION

A.    <u>Standing to Appeal the Disqualification Order</u>

The School District argues that Barringer does not have standing to appeal the disqualification order issued against her.  We disagree.  Counsel have standing to appeal orders that directly aggrieve them.  See Uselton v. Commercial Lovelace Motor Freight, Inc., 9 F.3d 849, 854-55 (10th Cir. 1993); see also Riggs

_____

[5]The School District filed a motion to dismiss the appeal of the disqualification order for failure to file a timely appeal.  Barringer's notice of appeal was incorrectly docketed as being filed on July 9, 1998, one day after the thirty-day period for filing an appeal had expired.  Because the docket was ultimately corrected to reflect the actual July 8, 1998 filing date, we deny the School District's motion to dismiss.

v. Scrivner, Inc., 927 F.2d 1146, 1149 (10th Cir. 1991) (stating that the plaintiff's attorney, not the plaintiff, is the proper party to appeal from a sanction imposed on the attorney). The disqualification order is a sanction directly affecting Barringer, and a favorable court decision would likely provide at least some redress from the injury from the sanction because it could help ameliorate the damage to her professional reputation from the sanction order. See Johnson v. Board of County Comm'rs, 85 F.3d 489, 492-93 (10th Cir. 1996) (finding that an appeal of a disqualification order was not moot, even though the underlying case had settled, as long as the disqualification order rested on grounds that could harm the attorney's professional reputation). Thus, Barringer has standing to appeal the disqualification order.[6]

B.      The Disqualification Order

---

[6]The School District cites Cities Serv. Co. v. Gulf Oil Corp., 976 P.2d 545 (Okla. 1999), to support its argument that Barringer lacks standing. In Cities Serv. Co., the Oklahoma Supreme Court held that attorneys lacked standing to challenge a trial judge's bench rulings which, by way of sanction, limited their participation in the proceedings. See 976 P.2d at 547-49. We find Cities Serv. Co., distinguishable from the present case. The court that decided Cities Serv. Co., specifically limited its decision to the "facts and circumstances, *particular to this case* . . . ." Id. at 546. The sanctions imposed on the attorneys in Cities Serv. Co. were less drastic in nature than the sanction at issue here because they did not disqualify the attorneys entirely from taking part in the proceedings; rather they merely limited the attorneys' participation in specific aspects of the trial. In any event, we are governed by our prior authority in Johnson v. Board of County Comm'rs.

"[O]rdinarily the control of attorneys' conduct in trial litigation is within the supervisory powers of the trial judge, and is thus a matter of judicial discretion." Cole v. Ruidoso Mun. Sch., 43 F.3d 1373, 1383 (10th Cir. 1994) (further quotations and citations omitted). The trial court's factual findings regarding the conduct of attorneys will not be disturbed unless there is no reasonable basis to support those conclusions. See id. We review de novo the trial court's interpretation of the applicable rules of professional responsibility and the trial court's interpretation of a statute. See id.

At the time of the district court's disqualification ruling, Rule 4.2 stated as follows:

> **Communication with Person Represented by Counsel**
> In representing a client, a lawyer shall not communicate, or cause another to communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

Okla. Stat. Ann. tit. 5, Ch. 1, App. 3-A (1997).[7] The comments to the rule stated:

> In the case of an organization, this Rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization, and with any other person whose act or

---

[7]The rule has been modified slightly since 1997. It now states: "In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so." Okla. Stat. Ann. tit. 5, Ch. 1, App. 3-A (1998).

- 13 -

omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization.

Id. In interpreting the rule and comments, the Oklahoma Supreme Court has stated: "Rule 4.2 applies to only those employees who have the legal authority to bind a corporation in a legal evidentiary sense, i.e., those employees who have 'speaking authority' for the corporation," which, according to that court, means those who have "the right to speak for, and bind, the corporation." Fulton v. Lane, 829 P.2d 959, 960 (Okla. 1992). Although this standard is somewhat imprecise, we know it includes employees below the level of corporate management because otherwise the third category of employees mentioned in Rule 4.2 would be redundant to the employees described in the first category of Rule 4.2 ("persons having a managerial responsibility on behalf of the organization").

Consistent with Fulton, the district court interpreted Rule 4.2 as applying to School District employees who had "speaking authority" such that they could bind the School District in a legal evidentiary sense. We agree with this interpretation, which is also consistent with other courts' interpretation of the same language. See, e.g., Chancellor v. Boeing Co., 678 F. Supp. 250, 252-54 (D. Kan. 1988) (eschewing the control group test and adopting the managing-speaking agent test);

- 14 -

Wright v. Group Health Hosp., 691 P.2d 564, 569 (Wash. 1984) (en banc) (adopting managing-speaking agent test).[8]

Fed. R. Evid. 801(d)(2)(D) provides guidance in determining whether an employee has such speaking authority, although it can offer only assistance by analogy because it addresses a different issue: hearsay, rather than ethical rules. See Chancellor, 678 F. Supp. at 254; see also Geoffrey C. Hazard, Jr. & W. William Hodes, Defining a 'Represented Person', The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct § 4.2:105, at 740 (1998). Rule 801(d)(2)(D) defines an admission by a party-opponent as a statement that is offered against a party, and that is "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Fed. R. Evid. 801(d)(2)(D).

Barringer does not dispute that she engaged in ex parte communications with Hix and Midgett. Thus, in assessing the application of Rule 4.2 to the present case, there are really only two questions for us to consider with respect to both Midgett and Hix. First, we must decide whether Midgett and Hix, with whom Barringer had ex parte communications, had "speaking authority" such that they could bind the School District in a legal evidentiary sense. Second, we must

---

[8]Chancellor and Wright were cited by and approved by the Oklahoma Supreme Court in Fulton. See Fulton, 829 P.2d at 960.

- 15 -

determine whether the ex parte communications concerned the subject of Weeks'

case.  We review the district court's factual findings on these questions under a

clearly erroneous standard.  See Naimie v. Cytozyme Lab., Inc., 174 F.3d 1104,

1109 (10th Cir. 1999).

Barringer argues that to answer the question of whether Midgett and Hix

have speaking authority sufficient to bind the School District, we should consider

the Oklahoma School Code's definition of "support employee" and its description

of appropriate bargaining units.[9]  According to Barringer, Midgett and Hix are

---

[9]The Oklahoma School Code defines "support employee" as follows:

> For purposes of this Act, "support employee" means a full-time
> employee of a school district as determined by the standard period of
> labor which is customarily understood to constitute full-time
> employment for the type of services performed by the employee who
> is employed a minimum of one hundred seventy-two (172) days and
> who provides those services, not performed by professional educators
> or licensed teachers, which are necessary for the efficient and
> satisfactory functioning of a school district and shall not include
> adult education instructors or adult coordinators employed by area
> vocational-technical school districts.

Okla. Stat. Ann. tit. 70, § 6-101.40.  The Oklahoma School Code provides for the
following collective bargaining units:

> 1.   Employees who are employed and certified as principals and
> assistant principals and who have responsibilities for the supervision
> of classroom teachers shall constitute an appropriate unit;
> 2.   All other employees who are required by the position in which
> employed to be licensed or certified as teachers or entry year teachers
> as those terms are defined in Section 1-116 of this title and who do

(continued...)

- 16 -

support employees included within the support personnel bargaining unit, and thus cannot be "supervisory" or "managerial" employees within the meaning of Rule 4.2. Barringer also argues that because the Labor Management Relations Act (LMRA), 29 U.S.C. § 141 et seq. (1998), prohibits supervisors from inclusion in a bargaining unit and further defines "supervisor" in a way that does not include the duties and responsibilities of Midgett or Hix, Midgett and Hix cannot be "supervisory" employees of the School District.

We, like the district court, find Barringer's citations to the Oklahoma School Code and the LMRA unpersuasive. First, those statutes have entirely different purposes than the professional conduct rule governing ex parte communications. Second, they provide no assistance in discerning which employees are covered under Rule 4.2 because the test for determining whether an employee falls within the scope of Rule 4.2 is not strictly whether the employee is designated as "supervisory" or as a "support employee." Rather, the test refers to agency principles and asks whether the employee has management speaking

[9](...continued)
not hold supervisory authority with respect to other teachers in the district shall constitute an appropriate unit; and
  3. All employees who are not required by their job description to be a principal, licensed or certified teacher, superintendent or other administrator shall constitute a separate bargaining unit.

Okla. Stat. Ann. tit. 70, § 509.2(A)(1-3).

- 17 -

authority such that he or she could bind the School District in a legal evidentiary sense.

Midgett stated in her deposition that her position was "operations supervisor," and that her duties included "oversee[ing] all the office personnel; mak[ing] sure that everything was properly handled, all the correspondence and everything; attendance; overtime; field trips; and mak[ing] sure that routing was done." In the affidavit submitted with the Plaintiff's Motion to Reconsider Plaintiff's Motion to Compel Discovery, Midgett stated that she was responsible for "overseeing subordinate employees in the performance of activities relating to the compensation of school bus drivers and other support employees of the Transportation Department." The deposition also revealed that Midgett's position had provided her with extensive experience in handling and overseeing overtime information. For example, the following exchange took place:

Q      Had your duties ever involved checking overtime claims or
        additional time sheets, for their validity?
A      Yes.
Q      And during what period of time did they include that?
A      Ever since I was operations supervisor. 1984.
Q      Through '95?
A      Uh-huh

One of the significant areas of dispute in Weeks' case involved the School District's handling of his overtime during his employment, which was from 1989 through 1995.

This evidence persuades us that Midgett was an employee with whom Barringer was prohibited from communicating under Rule 4.2. Midgett had managerial authority over some of the issues in controversy in the underlying litigation, particularly overtime issues. Under agency principles, it seems to us that she was vested with managerial speaking authority on the areas within her responsibility. Her testimony could be considered against her employer in a legal evidentiary sense.

The evidence indicates that the ex parte communications between Barringer and Midgett concerned School District procedures for calculating overtime, including any overtime specifically owed to Weeks. Because this constituted communication about the subject of Weeks' claim against the School District by an employee who had speaking authority from the School District, the district court correctly found a violation of Rule 4.2.[10]

---

[10]Barringer submitted as supplemental authority to this court State ex rel. Okla. Bar Ass'n v. Harper, 995 P.2d 1143 (Okla. 2000), to support her argument that no violation of Rule 4.2 occurred. In Harper, the court found no violation of Rule 4.2 because the bar association had failed to make the requisite showings that (1) the communication in question concerned a matter on which the insured was represented or (2) that the attorney had actual knowledge that the insured was represented by an attorney. See Harper, 995 P.2d at 1147-48. The present case is distinguishable for several reasons. First, as we stated above, the communication between Midgett and Barringer concerned Weeks' case. Second, Harper did not involve communication with an employee of an organization, thus there was no need to assess whether the person had speaking authority sufficient to bind the organization in a legal evidentiary sense. Finally, in Harper, the attorney

(continued...)

With regard to Hix, the evidence indicates that he was Weeks' immediate supervisor, and that Barringer considered him a "manager" within the School District. Hix referred to the bus drivers as "my employees," and Weeks had to have Hix sign off on his overtime claims. As with Midgett, we agree with the district court's finding that Hix had managerial authority over at least some of the issues in the underlying litigation. Again, Fed. R. Evid. 801(d)(2)(D) bolsters this conclusion. If Hix made a statement against the School District on an overtime issue that was within the scope of his agency or employment and made during the existence of the relationship, that statement would be admissible evidence that could be considered against the School District. See Fed. R. Evid. 801(d)(2).

The content of Hix's ex parte communications with Barringer is less clear than the content of Midgett's communications with Barringer. When the School District's attorney asked Hix during Barringer's deposition of Hix whether Hix had ever had conversations with Barringer concerning Barringer's representation of Weeks, Barringer told Hix he could assert the attorney client privilege. When Hix was subsequently asked whether he had ever discussed Weeks' lawsuit with

_____

[10](...continued)
involved in the communications had several bases for believing that the person in question was *not* represented by an attorney, including specific evidence to that effect. See id. at 1145-1146 (recounting facts), 1148 (stating that "[t]he records that Respondent received from GEICO reflected that Tenequer was unrepresented at the time Respondent took her statement"). That is not the case here. Thus, Harper does not impact our decision in this case.

- 20 -

Barringer, he answered in the negative. The evidence indicates that at the time of the deposition, Barringer was considering representing Hix in a lawsuit similar to the one in which she was representing Weeks.

This evidence is sufficient to uphold the district court's finding that Barringer had prohibited communications with Hix concerning the subject matter of the litigation. However, it is not necessary to rely on Barringer's communications with Hix to affirm the disqualification order of Barringer. Barringer's communications with Midgett are sufficient to support the disqualification order, regardless of the nature of her communications with Hix.

In imposing, sua sponte, the sanction of disqualification for the violation of Rule 4.2, the district court noted that it was the attorney, Barringer, and not the plaintiff, Weeks, who should bear the impact of Barringer's conduct. For that reason, the district court rejected the alternative remedy of excluding the testimony of Hix and Midgett from Weeks' case. In its subsequent order denying Barringer's motion to reconsider the disqualification, the district court noted that although disqualification was an extreme sanction, it was appropriate under these circumstances.

Disqualification may be ordered as a remedy for a violation of Rule 4.2. See, e.g., Faison v. Thornton, 863 F. Supp. 1204, 1215 (D. Nev. 1993) (discussing appropriate sanctions for violations of Rule 4.2); Shelton v. Hess, 599 F. Supp.

905, 911 (S.D. Tex. 1984) (finding disqualification appropriate for improper ex parte contacts between defendant and plaintiff's counsel). A district court has broad discretion in imposing the remedy of disqualification. See EEOC v. Orson H. Gygi Co., 749 F.2d 620, 621 (10th Cir. 1984) ("Except where a purely legal issue is involved, a district court's order of disqualification will be reversed only if the court has abused its discretion."); Faison, 863 F. Supp. at 1215 ("The court has broad discretion in fashioning an appropriate penalty or sanction to remedy the problems caused by an attorney's improper *ex parte* communications with a party represented by counsel.") (citation omitted). After a thorough examination of the record in this case, we conclude that the district court did not abuse its discretion in disqualifying Barringer for her violation of Rule 4.2.

Barringer, citing Fullmer v. Harper, 517 F.2d 20, 21 (10th Cir. 1975), argues that prior to imposing the disqualification sanction, the district court was required to hold an evidentiary hearing. In Fullmer, this court, reviewing the district court's denial of a motion to disqualify, stated:

> In our view the verified motion to disqualify raises ethical questions that are conceivably of a serious nature. In such circumstance a written response should be required. The trial court should then hold a full evidentiary hearing on the issues posed by the motion to disqualify and the response thereto, which hearing should include the taking of testimony. A motion of this type should not be resolved on the basis of mere colloquy between court and counsel. At the conclusion of such hearing the trial court should then make specific findings and conclusions, to the end that this court will then

- 22 -

> have a record before it which will permit a meaningful review,
> should review be sought.

See Fullmer, 517 F.2d at 21. We believe that the rationale behind Fullmer is inapplicable to the present case for several reasons. First, Barringer and Wilkinson did not dispute that ex parte communications had occurred; thus there was no need for any additional evidence to be presented to the court on that issue. Second, the district court already had in front of it considerable evidence regarding the status of both Midgett and Hix within the School District, as well as evidence regarding the substance of Barringer's ex parte communications with Midgett. Third, the district court's decision was not resolved on the basis of mere colloquy between court and counsel; rather it was made after thorough briefing by the parties on all of the issues involved. Fourth, in Fullmer, the basis for the court's decision was that the record before it was inadequate to permit a review of the denial of the motion to disqualify. Id. at 21. Here, the record is extensive and the court made specific findings and conclusions with respect to the disqualification order such that meaningful review of the matter is possible. Therefore, we do not believe the district court erred in failing to conduct a full evidentiary hearing on the issue.

A final argument advanced by Barringer regarding the disqualification order is that the School District's October 24, 1997 motion for protective order and motion to exclude evidence were untimely. Barringer cites Redd v. Shell Oil

Co., 518 F.2d 311 (10th Cir. 1975), a case in which this court held that the late filing of a motion to disqualify for a conflict of interest, on the Friday preceding a Monday trial date, justified the court's summary rejection of the motion. See Redd, 518 F.2d at 315. Barringer argues that the School District's motion was an "eleventh hour" motion akin to the motion filed in Redd. We disagree. Redd involved a motion to disqualify because of conflict of interest for prior representation. The parties knew or should have known of the alleged conflict much sooner than the eve of trial when they filed the motion. Here, the School District did not receive adequate information as to the ex parte communications between Barringer and Midgett until October 22, 1997, when Barringer filed the motion to reconsider her motion to compel discovery and attached the affidavit from Midgett. The School District's motion was filed just two days later, over two weeks prior to the November 10, 1997 trial date.[11] Barringer had an

_____

[11]Barringer argues that the School District must have been aware of her communications with Hix as of August 1997, when Hix was deposed by Barringer. Hix's deposition testimony in August 1997 may have raised the School District counsel's suspicions that Barringer had had ex parte communications with Hix, see supra; however, when asked at the deposition whether he had ever discussed Weeks' lawsuit with Barringer, Hix responded that he had not. Even if the School District had learned of improper ex parte communications with Hix in August 1997, the School District's October 22, 1997 motion, over two weeks prior to trial, was not an "eleventh hour" motion like the one in Redd. Moreover, because we rely on Barringer's communications with Midgett, not Hix, in affirming the district court's disqualification for violating Rule 4.2, and the School District did not learn of those communications until October 22, 1997, we

(continued...)

opportunity to respond to the motion, and did so on November 3, 1997. We therefore do not find the School District's motion untimely.

For the reasons discussed above, we affirm the district court's order disqualifying Barringer for violating Rule 4.2.

C. <u>Standing to Appeal the Order reducing Weeks' Award of Costs</u>

Although counsel have standing to appeal orders directly affecting them, they do not have standing to appeal orders only applicable to their clients. <u>See</u> <u>Uselton</u>, 9 F.3d at 854. Rule 54(d) of the Federal Rules of Civil Procedure specifies that "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs." Fed. R. Civ. P. 54(d)(1). "Prevailing party" refers to the party, not the attorney. <u>See</u> <u>Venegas v. Mitchell</u>, 495 U.S. 82, 87 (1990) (discussing this in the context of a claim for attorney's fees under 42 U.S.C. § 1988); <u>Howard v. Mail-Well Envelope Co.</u>, 150 F.3d 1227, 1230 (10th Cir. 1998) (same). Therefore, the district court's order reducing Weeks' award of costs is an order directly applicable only to Weeks. Barringer does not have standing to appeal that order.

---

[11](...continued)
find Barringer's arguments on this point irrelevant.

D. Standing to Appeal the District Court's Attorney Fees Order

As stated above, counsel have standing to appeal orders directly affecting them, but do not have standing to appeal orders only applicable to their clients. See Uselton, 9 F.3d at 854. An order awarding or denying attorney fees is an order applicable to the client, not the client's counsel. See Howard, 150 F.3d at 1230 (holding that attorney lacked standing to complain of loss of attorney fees under 42 U.S.C. § 1988); see also Pontarelli v. Stone, 978 F.2d 773, 775 (1st Cir. 1992) ("[A]n attorney lacks separate standing to appeal from a judgment awarding or denying fees to a party, since such concessions are granted to parties, not their attorneys."). The district court's attorney fees order is an order directly applicable only to Weeks, which Barringer does not have standing to appeal.

## III. CONCLUSION

Accordingly, we AFFIRM the district court's disqualification order. We conclude that Barringer lacks standing to appeal the district court's orders on the reduction in costs and the award of attorney fees, and thus we DISMISS the appeal as to those issues.

**Nos. 98-6293, 98-6382, 99-6239**
**Weeks v. Independent School District No. 1-89**

**BRISCOE, Circuit Judge, concurring:**

I concur in the result, but write separately to briefly express my views regarding the interpretation of Oklahoma Rule of Professional Conduct 4.2. At the time of Barringer's *ex parte* contacts with Hix and Midgett, Rule 4.2 provided:

> In representing a client, a lawyer shall not communicate, or cause another to communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

Okla. Stat. tit. 5, Ch. 1, App. 3-A, Rule 4.2 (1996). The critical question we are asked to decide is whether Hix and/or Midgett can be considered "parties" for purposes of Rule 4.2. More specifically, because Hix and Midgett are not named parties to the action, the question is whether they can be considered synonymous with the District for purposes of this litigation. See Niesig v. Team I, 558 N.E. 2d 1030, 1033 (N.Y. 1990) ("In litigation only the entity, not its employee, is the actual named party; on the other hand, corporations act solely through natural persons, and unless some employees are also considered parties, corporations are effectively read out of the rule.").

To determine the meaning of the word "party," the best starting point is the Comment to Rule 4.2, which (as of 1996) provided, in pertinent part:

In the case of an organization, this Rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization.

Okla. Stat. tit. 5, Ch. 1, App. 3-A, Rule 4.2, Comment (1996). Although the Comment provides some assistance, it is ambiguous in several important respects[1], and has thus been interpreted in widely divergent ways by federal and state courts. See, e.g., Jeffrey D. Wohl, Ethical Obligations of Employment Lawyers, 615 PLI/Lit 1033, 1060-64 (1999) (discussing various interpretations of Rule 4.2 adopted by the courts); Stephen M. Sinaiko, Ex Parte Communication and the Corporate Adversary: A New Approach, 66 N.Y.U.L. Rev. 1456 (Nov. 1991) (same).

The Oklahoma Supreme Court has previously wrestled with the ambiguities of Rule 4.2 and has held that "[i]n litigation involving corporations, Rule 4.2 applies to only those employees who have the legal authority to bind a corporation in a legal evidentiary sense, i.e., those employees who have 'speaking authority' for the corporation." Fulton v. Lane, 829 P.2d 959, 960 (Okla. 1992). Although

---

[1] For example, it is unclear precisely what was intended by the Comment's use of the phrase "persons having a managerial responsibility on behalf of the organization." Likewise, the phrase persons "whose statements may constitute an admission on the part of the organization" can be interpreted in a number of different ways.

we are not bound by <u>Fulton</u>, <u>see</u> <u>Cole v. Ruidoso Mun. Sch.</u>, 43 F.3d 1373, 1383 (10th Cir. 1994) (indicating that ethical rules in federal proceedings are subject to a national standard), it would arguably create difficulties for practitioners in Oklahoma were we to adopt an interpretation of Rule 4.2 different from that adopted by the Oklahoma Supreme Court. <u>See</u> <u>Weider Sports Equip. Co. v. Fitness First, Inc.</u>, 912 F. Supp. 502, 510 (D. Utah 1996) (noting that if a federal court interprets Rule 4.2 in a manner different from the highest state court of the state in which the federal court sits, it "could create problems for counsel by not knowing where the case was going to be litigated and which standard applied"); <u>see</u> <u>generally</u> <u>Hill v. St. Louis Univ.</u>, 123 F.3d 1114, 1121 (8th Cir. 1997) (interpreting Rule 4.2 of the Missouri Supreme Court Rules of Professional Conduct in a manner identical to the interpretation adopted by the Missouri Supreme Court).

The problem, however, is that <u>Fulton</u>'s interpretation of Rule 4.2 is itself ambiguous. In holding that the rule "applies to only those employees who have the legal authority to bind a corporation in a legal evidentiary sense," 829 P.2d at 960, the opinion cites two cases with contrasting interpretations of Rule 4.2. The first case, <u>Chancellor v. Boeing Co.</u>, 678 F. Supp. 250, 252-53 (D. Kan. 1988), broadly construes Rule 4.2 in a manner consistent with Fed. R. Evid. 801(d)(2)(D), and prohibits ex parte contact whenever the proposed interview

would concern matters within the scope of the employee's employment. The second case, <u>Wright by Wright v. Group Health Hosp.</u>, 691 P.2d 564, 569 (Wash. 1984), construes Rule 4.2 in a more narrow fashion, holding that it precludes ex parte contact only with those employees who "have managing authority sufficient to give them the right to speak for, and bind, the [employer] corporation." In other words, "[b]ecause the <u>Wright</u> managing-speaking agent test examines the authority of individuals to speak for the corporation, it points to the group of employees who, because they are 'authorized by the party to make a statement,' can make statements constituting evidentiary admissions under Rule 801(d)(2)(C) of the Federal Rules of Evidence." Sinaiko, <u>supra</u> at 1485 (internal footnotes omitted).

Given the ambiguities of <u>Fulton</u>, we are thus left to interpret Rule 4.2 on our own. Weighing the strengths and weaknesses of the available interpretations, I agree with the majority that we should adopt an interpretation consistent with Fed. R. Evid. 801(d)(2)(D)'s "scope-of-employment" test. Although I am admittedly concerned about the effect this interpretation will have on a party's ability to obtain information from an opposing corporate party, I am persuaded that it is the only interpretation that adequately protects a corporate party against the prejudice of ex parte communications with its employees. <u>See</u>, <u>e.g.</u>, Association of the Bar of the City of New York Comm. on Professional Ethics,

Op. No. 80-46 (undated) ("We believe that the corporation's right to effective representation can be guarded adequately only by viewing all present employees of a corporation as 'parties' . . . where the proposed interview concerns matters within the scope of the employee's employment."); see generally Michael H. Graham, Federal Practice and Procedure § 6723 at 184-88 ("all that is required [for a statement to be admissible] is that [it] concern a matter within the scope of the agency or employment, and that the agent or servant still be employed at the time of making the statement").

In light of this interpretation, I further agree with the majority that Barringer was prohibited from engaging in *ex parte* communications with Hix and Midgett, because both were deposed concerning matters within the scope of their employment. In particular, Hix, as Weeks' immediate supervisor, was questioned about the details of Weeks' termination. Midgett, as operations supervisor for the transportation department, was questioned about how requests for overtime compensation were processed, and how overtime and payroll records were maintained. Finally, both Hix and Midgett were questioned about whether a racially hostile working environment existed within the transportation department.